## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
KIMBERLY ANN WHITLEY         :     Civ. No. 3:17CV00121(SALM)
                             :
v.                           :
                             :
CAROLYN W. COLVIN,           :
ACTING COMMISSIONER OF       :
SOCIAL SECURITY              :     February 23, 2018
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Kimberly Ann Whitley ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") under the Act. Plaintiff has moved to reverse the decision of the Commissioner, or in the alternative, for remand to the Social Security Administration for a new hearing. [Doc. #22].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #22]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #27]** is **GRANTED.**

# I. __PROCEDURAL HISTORY__

Plaintiff filed an application for DIB on March 25, 2011, alleging disability beginning September 28, 2009. See Certified Transcript of the Administrative Record, compiled on March 31, 2017, (hereinafter "Tr.") 504-05. Plaintiff's application was denied initially on June 21, 2011, see Tr. 373-76, and upon reconsideration on September 19, 2011. See Tr. 377-79.

On March 14, 2012, plaintiff, represented by Attorney Joe Smith, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Gilbert Rodriguez. See Tr. 253-93. On June 29, 2012, ALJ Rodriguez issued an unfavorable decision. See Tr. 344-63. On December 12, 2013, the Appeals Council vacated ALJ Rodriguez's decision and remanded the matter. See Tr. 364-69. Plaintiff, again represented by Attorney Joe Smith, appeared and testified at a hearing before Administrative Law Judge Ronald J. Thomas on December 4, 2014. See Tr. 294-341. Vocational Expert ("VE") Larry Takki also testified at that hearing. See Tr. 333-37. On April 24, 2015, the ALJ issued an unfavorable decision. See Tr. 219-42. On December 9, 2016, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's April 24, 2015, decision the final decision of the Commissioner. See Tr. 1-7. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff timely filed this action for review and now moves to reverse the Commissioner's decision, or in the alternative, to remand for a new hearing. See Doc. #22. On appeal, plaintiff argues:

1.    The ALJ failed to consider plaintiff's diagnosis of rhabdomyolysis;

2.    The ALJ improperly evaluated plaintiff's fibromyalgia;

3.    The ALJ failed to assess plaintiff's impairments in combination;

4.    The ALJ failed to develop the record;

5.    The ALJ improperly weighed Dr. Manuel Pecana's medical source statement; and

6.    The ALJ's vocational analysis was insufficient.

See generally Doc. #22-1. As set forth below, the Court finds that the ALJ did not err as contended by plaintiff, and that the ALJ's determination is supported by substantial evidence.

## II.   **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation

omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV73(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by

substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, a plaintiff must demonstrate that he or she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.

§423(d)(2)(A); 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe").[1]

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed

---

[1] Some of the Regulations cited in this decision were amended, effective March 27, 2017. Throughout this decision, and unless otherwise specifically noted, the Court applies and references the versions of those Regulations that were in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying and referencing version of regulation in effect when ALJ adjudicated plaintiff's claim); see also Alvarez v. Comm'r of Soc. Sec., No. 14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the regulation in effect at the time of the decision." (citing Lowry, 474 F. App'x at 805 n.2)).

impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The Residual Functional Capacity ("RFC") is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions

based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.  **THE ALJ'S DECISION**

Following the above-described five-step evaluation process, ALJ Thomas concluded that plaintiff was not disabled under the Act during the relevant time period. See Tr. 233. As the ALJ noted, the relevant timeframe for this DIB application is from the alleged onset date of September 28, 2009, through the date of last insured, December 31, 2010. See Behling v. Comm'r of Soc. Sec., 369 F. App'x 292, 294 (2d Cir. 2010) (stating that to be entitled to DIB, plaintiff "[is] required to demonstrate that she was disabled as of the date on which she was last insured" (citing 42 U.S.C. §423(a)(1)(A))). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from the alleged onset date of September 28, 2009, through December 31, 2010. See Tr. 224. At step two, the ALJ found that plaintiff had the severe impairments of

"migraine; hypothyroidism; degenerative disc disease of the cervical and thoracic spine; obesity; fibromyalgia; lower extremity dystonia; conversion disorder; major depressive disorder." Tr. 224.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 225-27. The ALJ specifically considered Listings 1.04 (disorders of the spine); neurological listings in section 11.00; thyroid disorders in section 9.00; 14.09 (inflammatory arthritis); 12.04 (affective disorders); and 12.07 (somatoform disorders). See Tr. 225-27. Before moving on to step four, the ALJ found plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §404.1567(b). See Tr. 227. The ALJ found that plaintiff was further limited to

> occasional bending, twisting, squatting, kneeling, crawling, climbing, and balancing. She needed to avoid hazards such as heights, vibration, and dangerous machinery -- including driving. She was limited to occasional interaction with co-workers, supervisors, and the general public. She was further limited to simple, routine, repetitious work.

Tr. 227.

At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work. See Tr. 231. At step five, after considering plaintiff's age, education, work

experience, and RFC, and after consulting a VE, the ALJ found that there existed jobs in significant numbers in the national economy that plaintiff could perform. See Tr. 232-33.

## V.   **DISCUSSION**

Plaintiff raises six arguments in support of reversal or remand. See generally Doc. #22-1. The Court will address each argument in turn.

### A.   **Plaintiff's Diagnosis of Rhabdomyolysis**

Plaintiff first argues the ALJ erred because "the ALJ's decision did not address the issue of Ms. Whitley's rhabdomyolysis at all." Doc. #22-1 at 24. Defendant does not specifically address plaintiff's rhabdomyolysis diagnosis, but contends that the ALJ properly considered all of plaintiff's medical conditions. See Doc. #27-1 at 4.

A step two determination requires the ALJ to determine the severity of the plaintiff's impairments. See 20 C.F.R. §404.1520(a)(4)(ii); see also id. at (c). An impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §404.1509. Where plaintiff alleges multiple impairments, "each medically determinable impairment must meet the twelve-month durational requirement before it can be considered as part of a combination of impairments affecting disability." Iannopollo v. Barnhart, 280

F. Supp. 2d 41, 47 (W.D.N.Y. 2003). "At the second step of the sequential evaluation, a claimant bears the burden of showing that she has an impairment or combination of impairments which significantly limits the physical or mental ability to do basic work activity." Texidor v. Astrue, No. 3:10CV701(CSH), 2014 WL 4411637, at *16 (D. Conn. Sept. 8, 2014) (internal citation and quotation marks omitted); see also Jimmeson v. Berryhill, 243 F. Supp. 3d 384, 390 (W.D.N.Y. 2017) ("[P]laintiff bears the burden of proof at Step Two."); 20 C.F.R. §404.1512(a).

Although plaintiff now contends the ALJ erred in not considering her rhabdomyolysis, plaintiff did not identify rhabdomyolysis as a physical impairment in her brief to the ALJ, or mention it in her summary of medical records. See Tr. 652-66. Plaintiff was first diagnosed with rhabdomyolysis, "most likely viral[,]" by Dr. Humera Ahmed on January 18, 2009. Tr. 931-32. Dr. Jan Picket includes a diagnosis of rhabdomyolysis in her early assessments of plaintiff, dated: February 5, 2009, see Tr. 818-21; February 19, 2009, see Tr. 807-10; March 2, 2009, see Tr. 803-06; April 6, 2009, see Tr. 797-800; and April 15, 2009, see Tr. 792-96. However, in her April 21, 2009, assessment, Dr. Picket no longer included rhabdomyolysis as a diagnosis. See Tr. 782-85. Dr. Picket does not include a diagnosis or discussion of

rhabdomyolysis in any of her later reports, the last of which is dated October 15, 2009. See Tr. 746-97.

None of the other providers plaintiff saw throughout the summer or fall of 2009 diagnosed plaintiff with rhabdomyolysis. See generally Tr. 686-2434. Accordingly, there is no evidence in the record that plaintiff's rhabdomyolysis lasted for twelve months, and the ALJ properly excluded it from his analysis. The Court further notes that plaintiff alleges an onset date for her disability of September 28, 2009. See Tr. 504. The record does not contain any evidence that plaintiff suffered from rhabdomyolysis at any point after September 28, 2009.

**B.  Evaluation of Plaintiff's Fibromyalgia**

Plaintiff argues that the ALJ erred in assessing the impact of her fibromyalgia. See Doc. #22-1 at 25. Defendant argues that the ALJ properly assessed plaintiff's fibromyalgia, and that substantial evidence supports his assessment. See Doc. #27-1 at 5-6.

Plaintiff relies on Social Security Ruling ("SSR") 12-2p, which provides guidance for the assessment of the statements by a person alleging fibromyalgia "about his or her symptoms and functional limitations[.]" SSR 12-2p, 2012 WL 3104869, at *5 (S.S.A. July 25, 2012). The Guidance begins by instructing the

ALJ to follow the ordinary two-step process for evaluating

symptoms. See id. The first step is:

> There must be medical signs and findings that show the
> person has [a Medically Determinable Impairment] which
> could reasonably be expected to produce the pain or other
> symptoms alleged. [Fibromyalgia] which we determined to
> be [a Medically Determinable Impairment] satisfies the
> first step of our two-step process for evaluating
> symptoms.

Id. The ALJ found that fibromyalgia was a severe impairment, and

that "the claimant's medically determinable impairments could

reasonably be expected to cause [her] alleged symptoms[.]" Tr.

231. This satisfies the first step of the two-step process.

The ALJ is then directed to

> evaluate the intensity and persistence of the person's
> pain or any other symptoms and determine the extent to
> which the symptoms limit the person's capacity for work.
> If objective medical evidence does not substantiate the
> person's statements about the intensity, persistence,
> and functionally limiting effects of symptoms, we
> consider all of the evidence in the case record,
> including the person's daily activities, medications or
> other treatments the person uses, or has used, to
> alleviate symptoms; the nature and frequency of the
> person's attempts to obtain medical treatment for
> symptoms; and statements by other people about the
> person's symptoms. As we explain in SSR 96-7p, we will
> make a finding about the credibility of the person's
> statements regarding the effects of his or her symptoms
> on functioning.

Id. The ALJ is expressly permitted to consider "all of the

evidence in the case record" at this stage and will then make a

credibility assessment.

> At this second step, the ALJ must consider: (1) the
> plaintiff's daily activities; (2) the location,
> duration, frequency, and intensity of the plaintiff's
> pain or other symptoms; (3) precipitating and
> aggravating factors; (4) the type, dosage,
> effectiveness, and side effects of any medication
> plaintiff takes or has taken to relieve her pain or other
> symptoms; (5) other treatment the plaintiff receives or
> has received to relieve her pain or other symptoms; (6)
> any measures that the plaintiff takes or has taken to
> relieve her pain or other symptoms; and (7) any other
> factors concerning plaintiff's functional limitations
> and restrictions due to her pain or other symptoms

Kenyon v. Comm'r of Soc. Sec., No. 5:16CV260(WBC), 2017 WL
2345692, at *8 (N.D.N.Y. May 30, 2017) (citing 20 C.F.R.
§404.1529(c)(3)(i)-(vii)).

The Second Circuit has recognized "that fibromyalgia is a
disabling impairment and that there are no objective tests which
can confirm the disease." Green-Younger v. Barnhart, 335 F.3d
99, 108 (2d Cir. 2003) (internal citation and quotation marks
omitted). However, a "mere diagnosis of fibromyalgia without a
finding as to the severity of symptoms and limitations does not
mandate a finding of disability." Rivers v. Astrue, 280 F. App'x
20, 22 (2d Cir. 2008). In fact, in fibromyalgia cases, "the
credibility of the claimant's testimony regarding her symptoms
takes on substantially increased significance in the ALJ's
evaluation of the evidence[.]" Coyle v. Apfel, 66 F. Supp. 2d
368, 376 (N.D.N.Y. 1999).

Although "the subjective element of pain is an important factor to be considered in determining disability[,]" Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984) (citation omitted), an ALJ is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008). "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27. "If the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984). "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) (internal citation and quotation marks omitted).

In this case, plaintiff's objection is to the ALJ's determination, at the second step of the two-step credibility analysis, that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms

are not entirely credible[.]" Tr. 231. Specifically, plaintiff
alleges that the ALJ improperly required objective evidence
during the second step of this analysis, based on the ALJ's
comment that "the regulations require that a claimant's symptoms
must result from anatomical, physiological, or psychological
abnormalities which are demonstrable by medically acceptable
clinical and laboratory diagnostic techniques." Doc. #22-1 at
25-26 (quoting the ALJ's decision). The Court disagrees with
plaintiff's reading of the ALJ's decision. The ALJ's comment
accurately reflects the requirements of the first step, see 20
C.F.R. §404.1529(b), and does not indicate that the ALJ failed
to consider the record as a whole when evaluating plaintiff's
credibility during the second step. The ALJ properly relied on
the full record, including the objective medical evidence,
plaintiff's treatment notes, the treatment plaintiff has
received for her impairments, and plaintiff's activities of
daily living. See Tr. 225-31.

　　In assessing plaintiff's symptoms, the ALJ considered the
medical evidence, and noted several areas where the medical
record contradicted plaintiff's subjective complaints. See Tr.
225-31. The ALJ noted that plaintiff "was not always cooperative
during physical examinations. Several clinicians questioned her
effort or possible malingering." Tr. 226. The ALJ considered

that although plaintiff claimed to need a wheelchair, no doctor had actually prescribed a wheel chair. See Tr. 231 ("There has been no rationale given for the need for a wheelchair, which the claimant's husband provided to her. There is no indication that it was prescribed."). The Court notes that plaintiff reported in a Function Report dated May 26, 2011, that she used a walker and a wheelchair, and that they had been prescribed by a doctor in 2009. See Tr. 562. As the ALJ observed, the record does not support the assertion that a wheelchair was prescribed.[2]

The ALJ appropriately took particular note of a report by Dr. Mounir Borno, who had been the attending physician during plaintiff's inpatient hospitalization from September 25, 2009, through October 2, 2009. See Tr. 871-73. In plaintiff's discharge summary, Dr. Borno described plaintiff's treatment, and stated: "When the patient would be observed unaware, she was able to mobilize quite normally. Otherwise, she was crawling on the floor stating that she could not walk." Tr. 872.

The ALJ also reviewed plaintiff's self-reported daily activities. See Tr. 228. The ALJ described plaintiff's testimony that she could not prepare meals or do laundry, but that she did some mild dusting. See Tr. 228. Plaintiff testified that she did

_____

[2] Plaintiff points to no evidence of record supporting the notion that a doctor prescribed a wheelchair for plaintiff.

not go out alone, but went grocery shopping with her husband, and that she had flown to Connecticut to stay with her parents in 2010 and 2011. See Tr. 228. The Court further notes that plaintiff's May 26, 2011, Function Report states that she did not shop, and that she only left the house for appointments, in contradiction of her hearing testimony that she had flown to Connecticut and that she went shopping with her husband. See Tr. 559-60. The same Function Report indicates that plaintiff could walk one mile before she needed to stop and rest, and that she then needed a five-minute rest before she could resume walking. See Tr. 561. The conclusion that plaintiff was able to walk, but limited in how far she could walk -- rather than being completely unable to walk and being confined to a wheelchair -- is further supported by the report of vocational rehabilitation counselor, Shelaine Hayes. See Tr. 591. In a letter to plaintiff's attorney, Ms. Hayes noted that plaintiff reported a variety of difficulties, including trouble "walking long distances." Tr. 591.

Plaintiff assumes that simply because the ALJ found her lacking in credibility, the ALJ must have misapplied the standard for evaluation of fibromyalgia. The Court disagrees. Here, the ALJ evaluated the evidence of record and pointed to specific evidence that directly contradicts plaintiff's claims

as to the severity of her symptoms. Plaintiff's "reliance on Green-Younger ... is misplaced because, unlike the instant action, the disability determination in [that case] largely turned upon the lack of objective findings in the record." Degnan v. Berryhill, No. 16CV197(LJV)(MJR), 2017 WL 5514305, at *6 n.7 (W.D.N.Y. Oct. 16, 2017), report and recommendation adopted, 2017 WL 5501081 (Nov. 16, 2017).

The ALJ's credibility determination makes clear that he considered the entire record. The ALJ found plaintiff not credible for several reasons, including that her claim that she was completely unable to walk and needs a wheelchair was directly and strongly contradicted by other evidence. The ALJ identified specific reasons for his credibility determination, which are supported by substantial evidence in the record. The Court therefore will not second-guess his decision. See Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010). "It is the function of the Secretary, not [the court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll, 705 F.2d at 642. The ALJ committed no legal error in reaching his decision regarding plaintiff's credibility, and that decision is supported by substantial evidence; therefore, the Court finds no error.

**C.   Assessing Plaintiff's Impairments in Combination**

Plaintiff argues that the ALJ failed to consider her impairments in combination. See Doc. #22-1 at 23. Specifically, plaintiff argues that the ALJ failed to consider how plaintiff's lower extremity dystonia, obesity, fibromyalgia, and migraine headaches impacted her other impairments.[3] See id. at 24-28. Defendant argues that the ALJ properly considered all of plaintiff's medical conditions, and that his findings are supported by substantial evidence. See Doc. #27-1 at 6-7.

> The Commissioner is required to "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" to establish eligibility for Social Security benefits. 20 C.F.R. §404.1523. And, if the Commissioner "do[es] find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." Id.; see also 20 C.F.R. §416.945(a)(2). Our case law is plain

_____

[3] Plaintiff emphasizes the severity of her symptoms in the summer of 2009. See Doc. #22-1 at 25 ("But in the summer of 2009 she was not merely suffering from intractable migraine headaches; she had been diagnosed with hypothyroidism, dizziness, rhabdomyolysis, chronic fatigue, severe abdominal pain and fibromyalgia as well."). However, plaintiff's alleged onset date is September 28, 2009, and the ALJ was required to determine if she was disabled after that date. See Healy v. Colvin, No. 3:15CV01579(JAM), 2016 WL 4581403, at *2 (D. Conn. Sept. 2, 2016) ("The relevant time period for determining whether plaintiff was disabled for purposes of her entitlement to disability insurance benefits, then, runs from the alleged date of the onset of her disability ... through the [date of last insured.]").

that "the combined effect of a claimant's impairments must be considered in determining disability; the [Commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." Dixon v. Shalala, 54 F.3d 1019, 1031 (2d Cir. 1995)[.]

Burgin v. Astrue, 348 F. App'x 646, 647 (2d Cir. 2009). Because the ALJ found plaintiff to have severe impairments, he was required to consider the combined impact of plaintiff's impairments "throughout the disability determination process." Id.

### 1. The ALJ's Listings Analysis

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009); see also Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) ("[T]he claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one."). "For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990).

In considering the combined effects of plaintiff's impairments, "obesity can rise to the level of a disabling impairment under certain circumstances -- generally speaking,

when it increases the severity of coexisting impairments, particularly those affecting the musculoskeletal, cardiovascular and respiratory systems." Crossman v. Astrue, 783 F. Supp. 2d 300, 309 (D. Conn. 2010). "[T]he ALJ is required to consider the effects of obesity in combination with other impairments throughout the five-step evaluation process." Id.; see also SSR 02-1p, 2012 WL 34686281, at *5 (S.S.A. Sept. 12, 2002) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing."). However, the ALJ "will not make assumptions about the severity or functional effects or obesity combined with other impairments." Id. at 6. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." Id.

In this case, the ALJ explicitly considered plaintiff's impairments in combination when determining whether plaintiff met a Listing. See Tr. 225. ("Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments[.]"). In considering the neurological Listings in section 11.00, the ALJ considered "several of the

claimant's severe impairments, including migraine, fibromyalgia, and dystonia." Tr. 225. The ALJ also explicitly considered the "severity of the claimant's mental impairments, considered singly and in combination[.]" Tr. 225. The ALJ does not list out plaintiff's impairments in explaining why she does not meet Listing 1.04, Listing 14.09, or the Listings in 9.00. See Tr. 225. However, the ALJ's decision explains why he found plaintiff does not meet those listings, and it is apparent from the ALJ's analysis that he considered plaintiff's impairments in combination. Cf. Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ does not have to state on the record every reason justifying a decision. Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." (internal citation and quotation marks omitted)); see also Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112 (2d Cir. 2010) ("Although ... an ALJ should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment, the absence of an express rationale for an ALJ's conclusions does not prevent [the Court] from upholding them so long as [the Court is] able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was

supported by substantial evidence." (citation and internal quotation marks omitted)).

When considering plaintiff's obesity, the ALJ specifically noted that "[o]besity also has possible effects causing or contributing to impairments of other body systems." Tr. 225. However, the ALJ found that "[a]lthough the claimant's weight has fluctuated through the record, the evidence of record does not reflect adverse effects of obesity on any body system to the degree that the claimant would have an impairment of Listing severity." Tr. 225. As SSR 02-1p indicates, obesity "may or may not increase the severity or functional limitations of the other impairment[s]." SSR 02-1p, 2012 WL 34686281, at *6. In this case, the ALJ properly considered the potential for obesity to increase the severity of plaintiff's other impairments, and he concluded that it did not.

The Court finds that the ALJ properly considered plaintiff's impairments, including her obesity, in combination when determining whether plaintiff met a Listing, and there is no error. The Court further notes that plaintiff does not identify any Listing that she believes she met as of her last date insured, and substantial evidence supports the ALJ's finding that she did not meet a Listing prior to December 31, 2010.

### 2.    The ALJ's RFC Analysis

Plaintiff's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §404.1545(a)(1). "It is important that all impairments be evaluated in combination, since RFC is whatever ability one retains after the effects of <u>all</u> impairments (exertional and non-exertional; environmental and non-environmental; severe and non-severe) have been considered." <u>Echevarria v. Astrue</u>, No. 3:08CV01396(VLB), 2010 WL 21190, at *2 (D. Conn. Jan. 5, 2010).

In this case, the ALJ explicitly acknowledged the requirement to consider all of plaintiff's impairments. <u>See</u> Tr. 223 ("In making [an RFC] finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe."). The ALJ referenced Dr. Melvin Hu's assessments which diagnosed plaintiff with fibromyalgia and dystonia. <u>See</u> Tr. 229 ("In October 2009, the claimant consulted Dr. Hu, who diagnosed fibromyalgia and dystonia[.]"). The ALJ considered the treatment Dr. Hu provided. <u>See</u> Tr. 229 ("The claimant received trigger point injections in December 2009. She also received facet joint injections under fluroscopy in December 2009[.]"). The ALJ also considered numerous other reports detailing plaintiff's other impairments. <u>See</u>, <u>e.g.</u>, Tr. 228-29 (discussing Dr. Mohan Penmetcha's diagnosis of

fibromyalgia, hypothyroidism, migraine, and major depressive disorder); Tr. 229 (discussing evaluations of plaintiff's disc protrusion); Tr. 229 (discussing a psychiatric evaluation that indicated symptoms of major depressive disorder and a conversion disorder). Additionally, the ALJ specifically considered plaintiff's obesity, noting that in September of 2009, "she was 5'5" and weighed 184 pounds." Tr. 228.

The ALJ's review of plaintiff's medical records demonstrates that he assessed an RFC that was based upon the combination of all of plaintiff's impairments. See Seekins v. Astrue, No. 3:11CV264(TPS)(VLB), 2012 WL 4471266, at *7 (D. Conn. Aug. 14, 2012) (finding no error when ALJ stated he considered claimant's impairments in combination and properly examined the medical records and considered the combination of impairments together in determining plaintiffs RFC), Recommended Ruling adopted over objection, 2012 WL 4471265 (Sept. 27, 2012). Accordingly, the ALJ did not fail to consider plaintiff's impairments in combination when determining her RFC. As discussed in further detail below, the ALJ's RFC determination is supported by substantial evidence.

### D. The ALJ's Development of the Record

Plaintiff contends that the ALJ erred in failing to more fully develop the record. See Doc. #22-1 at 28. In particular,

plaintiff contends that the ALJ should have sought an assessment of "what [plaintiff] can or cannot do." Id. at 29. Defendant contends that there are no obvious gaps in the record, and that the record contains medical opinion statements from Dr. Stella Nwankwo, Dr. Kristi Compton, and Dr. Manuel Pecana. See Doc. #27-1 at 7-8.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); see also Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015) (same). The applicable statutes and regulations require the ALJ to develop plaintiff's "complete medical history for at least the twelve-month period prior to the filing of h[er] application, [and] also to gather such information for a longer period if there was reason to believe that the information was necessary to reach a decision." DeChirico v. Callahan, 134 F.3d 1177, 1184 (2d Cir. 1998) (alterations added); see also 42 U.S.C. §423(d)(5)(B); 20 C.F.R. §404.1512(b)(1). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79

n.5 (2d Cir. 1999) (quotation marks and citation omitted); <u>see</u> <u>also</u> <u>Walsh v. Colvin</u>, No. 3:13CV687(JAM), 2016 WL 1626817, at *2 (D. Conn. Apr. 25, 2016) ("The ALJ, however, has a duty to develop the record only if the evidence before her is inadequate to determine whether the plaintiff is disabled." (quotation marks and citation omitted)).

Where "the record contains sufficient evidence from which an ALJ can assess claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." <u>Monroe v. Comm'r of Soc. Sec.</u>, 676 F. App'x 5, 8 (2d Cir. Jan. 18, 2017) (quotation marks and citations omitted); <u>see</u> <u>also</u> <u>Tankisi v. Comm'r of Soc. Sec.</u>, 521 F. App'x 29, 34 (2d Cir. 2013) ("[R]emand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.").

"When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant, and plaintiff bears the burden of establishing such harmful error." <u>Parker v. Colvin</u>, No. 3:13CV1398(CSH), 2015 WL 928299, at *12 (D. Conn. Mar. 4, 2015) (quotation marks omitted); <u>see</u> <u>also</u> <u>Santiago v.</u>

Astrue, No. 3:10CV937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) ("The plaintiff in the civil action must show that he was harmed by the alleged inadequacy of the record[.]" (citation omitted)). Furthermore, "the ALJ's conclusions would not be defective if he requested opinions from medical sources and the medical sources refused." Tankisi, 521 F. App'x at 33-34.

Plaintiff identifies four medical source statements from treating physicians in the record: Dr. Pecana's statements dated March 12, 2012, and January 16, 2015; and Dr. Duarte Machado's statements dated January 15, 2016, and October 25, 2016. See Doc. #22-1 at 14-16. Plaintiff also notes the consultative examination by Dr. Nwankwo performed on December 31, 2009, and the consultative examination performed by Dr. Compton on January 10, 2012. See id. at 17-18.

In addition to these medical source statements, the record contains reports from multiple other doctors who treated plaintiff. These reports are not made up solely of charts and graphs of medical findings, but include narrative explanations of the doctors' findings. See, e.g., Tr. 690 (Dr. Purvi Sanghvi's assessment, dated April 2, 2009, stating: "The patient needs a walker at home."); Tr. 1199-1201 (Dr. Daniel Hopson's assessment, dated April 16, 2009, finding plaintiff had full

range of motion of her upper and lower extremities without pain
or swelling and with normal gait and normal 5/5 strength); Tr.
879-880 (Dr. Alex D'Cruz's assessment, dated September 29, 2009,
stating: "[W]hen observed unawares as when she is told to remove
her socks, etc., I did notice that she was able to move her feet
and toes up and down."); Tr. 872 (Dr. Borno's assessment, dated
October 6, 2009, stating: "When the patient would be observed
unaware, she was able to mobilize quite normally. Otherwise, she
was crawling on the floor stating that she could not walk.");
Tr. 976 (Dr. Nwankwo's assessment, dated December 31, 2009,
stating: "I believe there maybe elements of malingering.").

In all, the record contains over 1500 pages of medical
records. See Tr. 686-2434. Although the record does not contain
a function-by-function assessment of plaintiff's abilities prior
to her last date insured of December 31, 2010,[4] it contains
numerous explanations of plaintiff's medical issues and physical
limitations from which the ALJ could assess plaintiff's RFC.

There was sufficient evidence in the record for the ALJ to
determine plaintiff's RFC, and therefore the ALJ was under no
obligation to obtain additional medical opinions. See Swiantek,
588 F. App'x at 84 ("Given the extensive medical record before

---

[4] Dr. Machado's Report, dated January 15, 2016, provides a
function-by-function assessment as of that date. See Tr. 140-42.

the ALJ in this case, we hold that there were no obvious gaps

that necessitate remand solely on the ground that the ALJ failed

to obtain a formal opinion from one of [plaintiff's] treating

physicians regarding the extent of [plaintiff's] impairments in

the functional domain of caring for oneself." (quotation marks

and citation omitted)).

Despite the inclusion of several medical source statements

in the record, plaintiff specifically contends that the ALJ

should have further developed the record because "[n]o medical

source statement assessing what Ms. Whitley can or cannot do

appears in the Record before this Court from Drs. Chebib,

Pickett, Hu, Penmetcha or Pecana." Doc. #22-1 at 29.

Plaintiff's attorney provided ALJ Rodriguez with medical

records from Dr. Paul Chebib. See Tr. 1052. Dr. Chebib's records

indicate that he saw plaintiff in 1999 and 2000, and then again

in 2009. See Tr. 1054-92. Plaintiff's last three visits with Dr.

Chebib were on August 31, 2009, and September 19, 2009, and

September 22, 2009. See Tr. 1055-57. On August 31, 2009,

plaintiff asked Dr. Chebib for a medical release to go back to

work full time. See Tr. 1057. During her visit with Dr. Chebib,

on September 19, 2009, plaintiff indicated that she was having

leg and back spasms. See Tr. 1055. On September 22, 2009, Dr.

Chebib recommended plaintiff transfer to another facility. See

Tr. 1214. There is no indication that Dr. Chebib ever evaluated plaintiff's physical abilities after her alleged onset date of September 28, 2009. Based on this record, the Court cannot conclude that the ALJ was required to seek a medical source statement as to plaintiff's functional abilities from Dr. Chebib.

Plaintiff's attorney also provided ALJ Rodriguez with medical records from Dr. Penmetcha. <u>See</u> Tr. 1161. Dr. Penmetcha saw plaintiff on two occasions, September 11, 2009, and October 23, 2009, and recommended plaintiff try physical therapy. <u>See</u> Tr. 1165. Based on Dr. Penmetcha's limited contact with plaintiff, the Court cannot conclude that the ALJ was required to seek a medical source statement from him.

Following plaintiff's first hearing in 2011, ALJ Rodriguez requested "a narrative report and/or copies of your records[]" from Dr. Picket. <u>See</u> Tr. 686. The request asked Dr. Picket to: "Based on objective evidence, describe the patient's ability to do work activities such as sit, stand, walk, lift, carry, handle objects, hear, speak, and travel." Tr. 687. Dr. Picket provided over 150 pages of records, but did not include a functional assessment. <u>See</u> Tr. 686-847. ALJ Rodriguez also requested "a narrative report and/or copies of your records[]" from Dr. Hu. <u>See</u> Tr. 946. The request again asked for a description of

plaintiff's abilities. See Tr. 947. Dr. Hu provided 25 pages of records, but he did not include a functional assessment. See Tr. 946-970. Based on ALJ Rodriguez's direct requests for an assessment from Dr. Picket and Dr. Hu in 2011, the Court finds that the ALJ did not err by not re-contacting them in 2014. See Tankisi, 521 F. App'x at 33-34 ("[T]he ALJ's conclusions would not be defective if he requested opinions from medical sources and the medical sources refused.").

As to Dr. Pecana's medical source statement, after plaintiff's second hearing on December 4, 2014, the ALJ agreed to leave the record open for 30 days so that plaintiff's attorney could submit additional materials from Dr. Pecana. See Tr. 667. On January 14, 2015, plaintiff's attorney requested an additional 30 days to provide the information:

> Originally, Dr. Pecana told me that he would get me a report in time for the hearing. He didn't. After the hearing (in fact, about 2 hours after the hearing), I had the first of several telephone conversations with Dr. Pecana about the need for a report from him and his willingness to provide it. He assure me that he would provide a narrative report within the 30-day period. However, he hasn't. I've phoned and emailed him repeatedly about this, but have not heard a reply.

Tr. 667. Dr. Pecana provided a narrative report on January 16, 2015, which is included in the record. See Tr. 2063-64. Plaintiff's attorney made multiple attempts to secure a medical source statement from Dr. Pecana, and the ALJ left the record

open to receive it. The Court finds that the ALJ did not err by not re-contacting Dr. Pecana to request a more complete function-by-function analysis. Based on the repeated requests made to Dr. Pecana, and the assessment he provided, no further effort was required. See Tankisi, 521 F. App'x at 33-34.[5]

### D. Weight Assigned to Dr. Pecana's Statements

Plaintiff next contends that the ALJ erred by not providing "good reasons" for discounting Dr. Pecana's medical source statement. Doc. #22-1 at 34-35. Defendant has not responded to this argument.

When weighing any medical opinion, the regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the source. See 20 C.F.R. §404.1527(c)(2)-(6); SSR 96-2P, 1996 WL 374188, at *2

---

[5] The Court further notes that even if the ALJ had erred, plaintiff has not established that any such error was prejudicial. There is no basis to believe that any of these doctors, who last treated plaintiff several years before the ALJ's hearing, would have any input on plaintiff's abilities between September 28, 2009, and December 31, 2010. See Parker, 2015 WL 928299, at *12 ("When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant, and plaintiff bears the burden of establishing such harmful error." (quotation marks omitted)).

(S.S.A. July 2, 1996); SSR 06-03P, 2006 WL 2329939, at *3-4. The Second Circuit does not require a "slavish recitation of each and every factor [of 20 C.F.R. §404.1527(c)] where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam)). "The regulations require that the Commissioner give good reasons in the notice of determination or decision for the weight assigned to the treating source's opinion." Burgin v. Astrue, 348 F. App'x 646, 648 (2d Cir. 2009).

In this case, the ALJ considered the factors required under 20 C.F.R. §404.1527(c), and provided "good reasons" for discounting Dr. Pecana's opinion. In weighing Dr. Pecana's opinion, the ALJ specifically noted plaintiff's testimony about Dr. Pecana:

> After her insurance ended in December 2009, that Dr. Pecana, who was a personal friend and also a doctor, treated her every three months and prescribed medications. Dr. Pecana saw the claimant in his home, and did not charge her. Dr. Pecana's outstanding treatment notes were also the subject of the remand. It appears likely that Dr. Pecana did not keep treatment notes for these sessions.

Tr. 230. This demonstrates that the ALJ expressly considered: The length of treatment relationship (which began in late 2009); frequency of examination (every three months); nature and extent of the treatment relationship (that plaintiff saw Dr. Pecana in

his home; did not charge her; and wrote her prescriptions); and relevant evidence used to support the opinion (that Dr. Pecana did not keep any treatment notes from his sessions). After considering all of these factors, the ALJ gave Dr. Pecana's opinion "limited weight, as it is not supported by any treatment notes." Tr. 230.

Plaintiff does not argue that any treatment notes exist, but contends that the ALJ should not have discounted the weight given to Dr. Pecana's narrative. See Doc. #22-1 at 35 (arguing that "[i]n the absence of treatment notes, the touchstone is the consistency of the doctor's conclusions/opinions with the remainder of the available medical evidence").

The lack of treatment notes of any kind goes to the question whether Dr. Pecana's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(c)(2); see also Velez Santiago v. Colvin, No. 3:16CV338(JCH), 2017 WL 618442, at *8 (D. Conn. Feb. 15, 2017) ("A lack of support by medically acceptable clinical and laboratory diagnostic techniques is a valid reason to decline to give controlling weight to a treating physician opinion." (internal citation and quotation marks omitted)). Dr. Pecana's narrative statement does not indicate what, if any, medically acceptable clinical and laboratory techniques he used

to reach his conclusions. Furthermore, his assessment that by the end of 2009 plaintiff "could hardly sustain ambulations and brisk mobility[,]" Tr. 2063, is contradicted by other medical sources, as well as plaintiff's own statements from 2011. The Court finds no error in the ALJ's assignment of limited weight to Dr. Pecana's narrative, based on the lack of any treatment notes, and the other relevant factors.

The ALJ also properly noted that Dr. Pecana had not provided a function-by-function assessment, but instead simply concluded that plaintiff's symptoms hindered her from competitive employment. See Tr. 230-31. Although plaintiff contends that this is not a valid reason to discount the opinion, it is well-established that the determination of whether a plaintiff is capable of gainful employment is reserved for the Commissioner. See 20 C.F.R. §404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. ... A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 20 C.F.R. §404.1513(b)-(c) (setting forth what should be contained in medical reports and statements about what a claimant can still do); see also Taylor v. Barnhart, 83 F. App'x 347, 349 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor

was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner." (citations omitted)); Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 398 (D. Conn. 2012) ("[A] treating physician's statement that the claimant is disabled cannot itself be determinative because that determination is reserved to the Commissioner." (citation and internal quotation marks omitted)), aff'd, 515 F. App'x 32 (2d Cir. 2013). Accordingly, the ALJ properly found that the question of whether plaintiff is disabled is reserved to the Commissioner, and the ALJ was not required to give weight to Dr. Pecana's conclusory statement that plaintiff was disabled.

Finally, the ALJ also noted that Dr. Pecana is "a personal friend to the claimant," and "is more likely to offer an opinion that would assist her in obtaining benefits." Tr. 230. Plaintiff argues that the ALJ erred by considering Dr. Pecana's relationship with plaintiff in deciding how much weight to give his statement. See Doc. #22-1 at 35.

The Second Circuit has held that an ALJ may consider a doctor's friendship with a patient while evaluating the nature of their treatment relationship. See Heagney-O'Hara v. Comm'r of Soc. Sec., 646 F. App'x 123, 126 (2d Cir. 2016) (Upholding an ALJ's decision where "the ALJ gave little weight to the opinion

of Dr. Tesser, finding that, although he was a rheumatologist, he was friends with Heagney-O'Hara and lacked a treating relationship with her."); see also Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001) ("We must keep in mind the biases that a treating physician may bring to the disability evaluation. The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." (internal citation and quotation marks omitted)).

In this case, the ALJ considered Dr. Pecana's friendship with plaintiff in the context of his treatment relationship with her; that Dr. Pecana saw plaintiff in his home; did not charge her; and did not keep records. In this context, the Court finds no error in the ALJ considering Dr. Pecana's friendship with plaintiff while evaluating the "[n]ature and extent of the treatment relationship." 20 C.F.R. §404.1527(c)(2)(ii).

Furthermore, where the ALJ has provided good reason to discount a medical opinion, the inclusion of other reasons may be harmless error. See Bessette v. Colvin, No. 2:14CV164(JMC), 2015 WL 8481850, at *10 (D. Vt. Dec. 9, 2015) ("The error is harmless, however, given that the ALJ gave several other legally proper reasons to discount [the doctor's] opinions and substantial evidence supports those reasons."); see also Snyder

v. Colvin, No. 5:13CV585(GLS)(ESH), 2014 WL 3107962, at *4
(N.D.N.Y. July 8, 2014) ("[A]dministrative legal error is
harmless when the same result would have been reached had the
error not occurred." (citation omitted)). Because the ALJ
provided other good reasons for limiting the weight given to Dr.
Pecana's statement, and those reasons are supported by
substantial evidence, any error in considering Dr. Pecana's
relationship with plaintiff would be harmless.

    **E.   Vocational Analysis**

    Plaintiff agrees that the ALJ's hypothetical mirrored his
RFC findings, but argues that the hypothetical was nevertheless
defective. See Doc. #22-1 at 37-38. Defendant argues that
substantial evidence supports the ALJ's hypothetical. See Doc.
#27-1 at 9.

    "An ALJ may rely on a vocational expert's testimony
regarding a hypothetical as long as there is substantial record
evidence to support the assumptions upon which the vocational
expert based his opinion and accurately reflects the limitations
and capabilities of the claimant involved." McIntyre v. Colvin,
758 F.3d 146, 150 (2d Cir. 2014) (internal citation and
quotation marks omitted); see also Mancuso v. Astrue, 361 F.
App'x 176, 179 (2d Cir. 2010) (upholding an ALJ's hypothetical
where "the ALJ's hypothetical mirrored [plaintiff's] RFC, which

... was supported by substantial evidence in the record[]").
Accordingly, the Court construes this argument as a claim that
there is not substantial evidence to support the ALJ's RFC
finding.

As previously noted, a plaintiff's RFC is "the most [she]
can still do despite [her] limitations." 20 C.F.R.
§404.1545(a)(1). An ALJ is "entitled to weigh all of the
evidence available to make an RFC finding that [is] consistent
with the record as a whole." <u>Matta v. Astrue</u>, 508 F. App'x 53,
56 (2d Cir. 2013) (citation omitted).

Here, the ALJ found that through the date last insured,
plaintiff

> had the residual functional capacity to perform
> sedentary work as defined in 20 C.F.R. [§]404.1567(a)
> except with occasional bending, twisting, squatting,
> kneeling, crawling, climbing, and balancing. She needed
> to avoid hazards such as heights, vibration, and
> dangerous machinery - including driving. She was limited
> to occasional interaction with co-workers, supervisors,
> and the general public. She was further limited to
> simple, routine, repetitive work.

Tr. 227. The Regulations define "sedentary work" as

> lifting no more than 10 pounds at a time and occasionally
> lifting or carrying articles like docket files, ledgers,
> and small tools. Although a sedentary job is defined as
> one which involves sitting, a certain amount of walking
> and standing is often necessary in carrying out job
> duties. Jobs are sedentary if walking and standing are
> required occasionally and other sedentary criteria are
> met.

20 C.F.R. §404.1567(a). In finding plaintiff had the capacity to perform limited sedentary work, the ALJ considered plaintiff's subjective complaints and activities of daily living; the objective medical evidence; plaintiff's treatment notes; the reports of multiple doctors; and the opinions of the consultative examiners. <u>See</u> Tr. 227-31.

The objective evidence of record prior to the date of last insured supports the ALJ's RFC determination. The record contains multiple assessments indicating plaintiff did not need a wheelchair. Dr. D'Cruz's assessment, dated, September 29, 2009, one day after the alleged onset of plaintiff's disability, states:

> It is difficult to test power. She appears to give no effort. She cannot move her toes to command and neither can she dorsiflex or plantarflex her feet to command, but when observed unawares as when she is told to remove her socks, etc., I did notice that she was able to move her feet and toes up and down.

Tr. 879-880. Dr. Borno's assessment, dated, October 6, 2009, states: "[W]hen the patient would be observed unaware, she was able to mobilize quite normally. Otherwise, she was crawling on the floor stating that she could not walk." Tr. 872. In Dr. Nwankwo's report, dated December 31, 2009, she states: "I believe there maybe elements of malingering." Tr. 976.

In addition to the medical assessments, the ALJ evaluated plaintiff's subjective complaints of pain and her activities of

daily living, and found that plaintiff's subjective complaints
were "not entirely credible." Tr. 231. As noted above, the
record reflects that on March 4, 2011, plaintiff spoke with a
vocational rehabilitation counselor and told her she had trouble
with "walking long distances." See Tr. 591. Plaintiff's self-
reported function report, dated May 26, 2011, states that she
could walk one mile before she needed to stop, and needed to
rest for five minutes before she could resume walking. See Tr.
561. The ALJ properly considered plaintiff's subject complaints
and found them to be not entirely credible.

The Court finds the ALJ properly weighed the medical
records, as well as plaintiff's subjective complaints, "to make
an RFC finding that [is] consistent with the record as a whole."
Matta, 508 F. App'x at 56 (citation omitted). Substantial
evidence, as previously discussed, supports the ALJ's RFC
finding. Accordingly, the Court finds that the ALJ did not err
when relying on the hypothetical to the VE, which precisely
matched his RFC finding.

## VI. **CONCLUSION**

For the reasons set forth herein, the defendant's Motion
for an Order Affirming the Decision of the Commissioner **[Doc.
#27]** is **GRANTED,** and plaintiff's Motion for Order Reversing the

Decision of the Commissioner and/or Remanding the Matter for

Hearing **[Doc. #22]** is **DENIED**.

SO ORDERED at New Haven, Connecticut, this 23rd day of

February, 2018.

<pre>
                    ____/s/_____
                    HON. SARAH A. L. MERRIAM
                    UNITED STATES MAGISTRATE JUDGE
</pre>